**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**


**NATIONAL BUILDERS AND CONTRACTORS
INSURANCE COMPANY, A RISK RETENTION GROUP**                    **PLAINTIFF**


**VERSUS**                    **CIVIL ACTION NO. 2:09cv217KS-MTP**


**SLOCUM CONSTRUCTION, LLC; ROBERT
YOUNGBLOOD, INDIVIDUALLY AND AS TRUSTEE
ON BEHALF OF WALTER EARL MCKENZIE,
HIS BENEFICIARY, ABC INDIVIDUALS AND XYZ ENTITIES**                    **DEFENDANTS**


**MEMORANDUM OPINION AND ORDER**

This matter is before the court on a Motion for Summary Judgment **[#16]** filed on

behalf of the plaintiff, National Builders and Contractors Insurance Company.  The

court, having reviewed the motion, the responses, the briefs of counsel, the authorities

cited, the pleadings and exhibits on file and being otherwise fully advised in the

premises finds that the motion is well taken and should be granted.  The court

specifically finds as follows:


**FACTUAL BACKGROUND**

This action arises from a Counterclaim filed in the Chancery Court of Marion

County, Mississippi, arising out of the construction of a residence by Slocum

Construction, LLC (Slocum Construction), on property owned by the Counter-Plaintiff,

Robert Youngblood, as Trustee for the use and benefit of Walter Earl McKenzie.

Slocum Construction was associated by Kelvin Anderson to construct a residence in Foxworth, Mississippi. Anderson directed Slocum to the place where the house was to be located, and even had a set of pins or stakes showing the boundaries of the property. Slocum built the house and Anderson moved in. However, after Anderson failed to make payment for the residence, Anderson deeded the property to Slocum to settle the debt. Thereafter, Slocum contracted with a potential purchaser of the house. During the due diligence period on the purchase of the house, Slocum was required to obtain a new survey of the property. It was then that it was discovered that the house that had been built was not located on the land that Slocum possessed by deed. Instead, the property upon which the house was constructed was owned by Robert Youngblood, as Trustee for the use and benefit of Walter Earl McKenzie.

Slocum Construction, upon realizing that it had built the subject house on the wrong property, contacted Mr. Youngblood and informed him of same and requested to purchase the house from him. Landy Slocum of Slocum Construction met with Mr. Youngblood to discuss the situation concerning the house. It was at this time that, according to Slocum, Youngblood acknowledged that he knew all along about the construction of the house, that he had a familial relationship with Anderson, and that he would not sell the lot or the house to Slocum. Accordingly, Slocum filed suit against Mr. Youngblood for fraud and unjust enrichment, seeking the sale of the portion of the property upon which the subject house is located to Slocum Construction. It was in response to that lawsuit that the underlying state court Counterclaim was filed by Mr. Youngblood against Slocum Construction.

The Counterclaim alleges that Slocum Construction has willfully trespassed upon

Mr. Youngblood's property held in trust for Mr. McKenzie, not only in the construction of the subject house, but in the rental of the subject house and the derivation of profits therefrom. The Counterclaim further alleges that Slocum Construction knew the neighboring landowners and had an opportunity to search the title on the property upon which the subject house was built, and even had access to the identity and whereabouts of Mr. Youngblood.

As a result, the Counter-Plaintiffs are seeking damages for trespass, for declaratory judgment that Slocum Construction has willfully and unlawfully trespassed upon the property of Mr. Youngblood, for damages derived from such trespass, for injunctive relief enjoining Slocum Construction from entering onto said property, and, lastly, for "resulting damages" which are not discussed in the Counterclaim.

Although not pled in the Counterclaim, upon information and belief, there have been claims made by Mr. Youngblood, through his attorney, that stress caused by these events have led to one or two heart attacks, which appear to have been or will be incorporated into his claim. It appears that Mr. Youngblood suffered cardiac arrest on February 17, 2009 and suffered with complaints of chest pain on April 2, 2009.

At all times relevant, Slocum Construction owned NBCI policy number GL289079607 ("NBCI's Policy"). Slocum Construction has demanded that NBCI provide it with defense and indemnity of the Counterclaim filed in the Chancery Court of Marion County, under this policy. NBCI filed the present declaratory judgment action asserting no duty to defend or indemnify. NBCI has now moved for summary judgment.

**STANDARD OF REVIEW**

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment. *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of

law, . . . all other contested issues of fact are rendered immaterial. *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992). In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John*, 757 F.2d at 708. "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In Re Municipal Bond Reporting Antitrust Lit.* , 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary

judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial.  Rule 56(e), Fed.R.Civ.P.  *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'"  *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5ᵗʰ Cir. 1980)).

## ANALYSIS

The plaintiff argues that based upon the undisputed facts and the terms of NBCI's insuring agreement, there is no coverage available for the indemnification or the defense of Slocum Construction, against the Counterclaim brought by Youngblood, Individually and as Trustee on behalf of Walter Earl McKenzie, His Beneficiary.  NBCI has, thus, moved for a summary declaration to that effect.  Both Slocum and Youngblood have filed oppositions to the motion.

"Where a contract is clear and unambiguous, its meaning and effect are matters of law.*"  USF&G Co. v. Omnibank*, 812 So.2d 196, 198 (Miss.2002).  "The policy itself is the sole manifestation of the parties' intent, and no extrinsic evidence is permitted absent a finding by a court that the language is ambiguous and cannot be understood from a reading of the policy as a whole."  *Great Northern Nekoosa Corp. v. Aetna Cas.*

*and Sur. Co.*, 921 F.Supp. 401, 406 (N.D.Miss.1996)(citing *Cherry v. Anthony, Gibbs, Sage*, 501 So.2d 416, 419 (Miss. 1987).  "The construction of an insurance contract is limited to an examination of the written terms of the policy itself."  *Great Northern Nekoosa Corp.*, 921 F.Supp. at 406 (N.D.Miss.1996)(citing *Employers Mut. Casualty Co. v. Nosser*, 250 Miss. 542, 553, 164 So.2d 426, 430 (1964)).

In interpreting an insurance policy, the courts "should look at the policy as a whole, consider all relevant portions together and, whenever possible, give operative effect to every provision in order to reach a reasonable overall result."  *J & W Foods Corp. v. State Farm*, 723 So.2d 550, 552 (Miss. 1998).  "The court must construe the policy in a manner that effectuates the parties' intentions."  *Great Northern Nekoosa Corp.*, 921 F.Supp. at 406.  *See also Western Line Consol. School Dist. v. Continental Cas. Co.*, 632 F.Supp. 295, 302 (N.D.Miss.1986)(citing *Monarch Ins. Co. v. Cook*, 336 So.2d 738, 741 (Miss.1976)).

In determining whether coverage exists in this case, the court must examine whether or not the allegations of the Counterclaim fall within the terms of the NBCI policy's Insuring Agreement.  If they do, then the court must then determine whether any of the exclusions contained within the applicable policy apply.

Part A of NBCI's Policy provides the following in its Insuring Agreement:

> a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit"

that may result. But:

(1)　　The amount we will pay for damages and "defense expenses" is limited as described in Section III - Limits Of Insurance; and

(2)　　Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements and "defense expenses" under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

b.　　This insurance applies to "bodily injury" and "property damage" only if:

(1)　　The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)　　The "bodily injury" or "property damage" occurs during the policy period; and

(3)　　Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c.　　"Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that

"bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

Section 1—Coverages, Coverage A, Para. 1, Insuring Agreement, as modified by "Defense Expense" Included in the Limit of Insurance Endorsement.

Within the NBCI Policy, "bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. No emotional distress is covered except emotional distress caused by bodily injury." Section V. Definitions at ¶ 3.

The plaintiff argues that in order to trigger coverage under Part A of NBCI's Policy for claims of "bodily injury", a physical bodily injury must first occur. As this court has stated,

The policies define the term "bodily injury" as "bodily injury,

> sickness or disease sustained by a person, including death, resulting from any of these at any time." Clearly, this contemplates physical injury.

*Audubon Ins. Co. v. Stefancik*, 98 F.Supp.2d 751, 756 (S.D. Miss. 1999).

There are no allegations contained in the Counterclaim that indicate that there has been any claimed physical injury to any of the Counter-Plaintiffs on account of the construction of the subject house. Nonetheless, according to information provided by Mr. Youngblood's attorney, it appears that the "true facts" behind the Counterclaim do state a claim for damages because of "bodily injury" as that term is defined by NBCI's policy. Therefore, the Counterclaim does appear to make a claim for damages because of "bodily injury" as that term is defined under Part A of NBCI's policy, but only to the extent of Mr. Youngblood's claim for health-related illness resulting from the underlying trespass. That does not end the inquiry, however.

The next inquiry is whether the Counterclaim alleges "property damage" as defined in the NBCI Policy. NBCI's Policy defines "property damage" as being related to "tangible property." Specifically, NBCI's Policy defines "property damage" as

> a. Physical injury to tangible property other than "your work" or "your product", including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Section V, Definitions at ¶17.

NBCI's Policy defines "your work" as,

> a. Means:

-10-

          (1)     Work or operations performed by you or on your behalf; and

          (2)     Materials, parts or equipment furnished in connection with such work or operations.

     b.     Includes:

          (1)     Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

          (2)     The providing of or failure to provide warnings or instructions.

Section V, Definitions at ¶ 22.

In reviewing the definition of "property damage", it is clear that one of the requirements is that there must exist some physical injury to tangible property or some loss of use to tangible property not physically injured for property damage to exist under this definition. *See Audubon Ins. Co. v. Stefancik*, *supra*. Specifically, the *Stefancik* court held as follows:

> Defendants also assert that the Stefanciks' allegations of lost income, lost health benefits and lost debenture investments constitutes sufficient "property damage" for coverage to exist under the insurance policies. The Court disagrees. The insurance policy defines "property damage" in terms of "tangible property." The only injuries that the Stefanciks have alleged are financial losses and perhaps injuries to their reputations through their defamation claims. These are not injuries to any tangible property. They are merely pecuniary or economic losses. Purely pecuniary or economic losses are not "property damage".

*Id.* at 756 (citations omitted). *See also, Nationwide Mut. Ins. Co. v. Lake Caroline, Inc.*, 515 F.3d 414, 423 (5th Cir. 2008); *QBE Ins. Corp. v. Eubanks and Bailey Investment Corp.*, No. 3:07CV007-B-A 2008 WL 907460, *2 (N.D. Miss. Mar 31, 2008). In the CGL policy context, "tangible property" refers to property capable of being handled, touched

or physically possessed. *Lamar Truck Plaza, Inc. v. Sentry Ins.*, 757 P.2d 1143, 1144 (Colo.Ct.App.1988).

A review of the state court Counterclaim does not reveal any allegations of either physical injury to tangible property or loss of use of tangible property. The only actual damages sought, other than declaratory and injunctive relief, are for lost rents that apparently Slocum is receiving in the rental of the subject house to others. As indicated above, both the Mississippi State courts and the Federal courts applying Mississippi law are in accord that purely economic or pecuniary losses, such as lost rentals, do not constitute physical loss to tangible property or loss of use of tangible property, and, thus, are not "property damage" under the definition of that term as used by NBCI's policy. *Stefancik*, 98 F.Supp. 2d at 756. All the claims made relate to a central theme of either lost rents or diminution in the total value of the subject property. Therefore, the Counterclaim does not make a claim for "property damage" as that term is defined by NBCI's policy.

Even though the court has concluded that there has been no "property damage" alleged in the state court Counterclaim that would trigger coverage under the NBCI Policy, a further discussion is relevant to the ultimate determination of coverage or a duty to defend. That relevant inquiry is whether any alleged "bodily injury" and/or "property damage" has been caused by an "occurrence."

To the extent that the damages claimed by Youngblood on his own behalf and on behalf of McKenzie constitute damages because of "bodily injury", NBCI's Policy requires that for either "bodily injury" or "property damage" to be covered, it must be caused by an "occurrence." The NBCI Policy defines "occurrence" as follows:

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Section V, Definitions at ¶13.

As stated, the policy defines occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." It does not define "accident." However, the Mississippi courts and federal courts interpreting Mississippi law have had ample opportunity to review what "accident" means in the exact context of the policy language at issue.

The Mississippi Supreme Court has held that an accident is something which "produces unexpected and unintended results" from the standpoint of the insured. *Farmland Mut. Ins. Co. v. Scruggs*, 886 So.2d 714, 719 (Miss. 2004). Further, "the term accident refers to [the insured's] action and not whatever unintended damages flowed from the act." *ACS Const. Co., Inc. Of Mississippi v. CGU*, 332 F.3d 885, 888 (5th Cir. 2003)(quoting *Allstate Ins. Co. v. Moulton*, 464 So.2d 507, 510 (Miss. 1985)). Additionally, the Mississippi court has clearly held that claims arising from intentional conduct that create foreseeable harm, regardless of the ultimate injury or damage, are not covered under the type of policy language at issue here. *See Omnibank*, 812 So.2d at 201.

The Mississippi Supreme Court has articulated a test to determine whether an incident falls under the definition of "accident," and is thus an "occurrence" under commercial liability policies such as the NBCI Policy. It held that an act is not an "accident," and thus not an "occurrence" if:

     (1)     the act is committed consciously and deliberately,

> without the unexpected intervention of any third force; and
>
> (2)    the likely (and actual) effect of the act was well within the actor's foresight and anticipation.

*Moulton*, 464 So. 2d at 509.

Therefore, a reviewing court must determine whether a chain of events leading to the damages complained of by a plaintiff was set in motion and followed a course of action committed consciously and deliberately and controlled by the insured without the unexpected intervention of any third party or extrinsic force. *Moulton*, 464 So.2d at 509. Then, the court must also determine whether the likely (and actual) effect [*i.e.*, damage] of those actions were well within the putative insured's "foresight and anticipation." *Id.*

Although this is not a construction defect case, but rather a case involving an intentional trespass, the opinion of *Architex Association, Inc. v. Scottsdale Insurance Co.*, 2010 WL 457236 (Miss. 2010), is worth examining. In that case, the Mississippi Supreme Court recently held that construction defects may, in fact, constitute an "accident" or "occurrence" under an ISO CGL policy, based upon the underlying cause of the defects.

Scottsdale's policy at issue in *Architex* was an ISO CGL form policy containing an insuring agreement standard to policies of that type and similar to the policy at issue herein, providing coverage for suits seeking a loss for damages, either because of 'bodily injury" or "property damage" as those terms are defined in the policies, and caused by an "occurrence." The *Architex* Court held that defective or faulty workmanship could be caused by an accident, but that the issue should be determined on a case-by-case, fact-by-fact basis. Specifically, the Court stated,

> It appears that part of the confusion between insurers and insureds, and in conflicting opinions of courts, is caused by branding faulty workmanship, defective work, and other similar phrases as "occurrences" or not. Faulty workmanship, defective work, et al., may be accidental, intentional, or neither. A return to basics leads this Court to conclude that the underlying facts will determine whether the Complaint of "property damage" (defective or faulty workmanship) was proximately caused by breach of a recognizable duty and whether that breach was accidental or intentional; or, whether the "property damage" was caused by neither. In two of the three aforementioned scenarios, no coverage would exist. Only when "property damage" is proximately caused by an accident (an inadvertent act) does an "occurrence," as defined by the policy, trigger coverage. The record before us is insufficiently developed to answer that question with certainty.

*Architex Association Inc. v. Scottsdale Ins. Co.*, 2010 WL 457236, *11 (¶ 28).

Therefore, in addressing this issue, the court must attempt to discern from the allegations of the Counterclaim whether the conduct of NBCI's insured that resulted in the damages complained of, was either intentional, accidental, or "otherwise."

The issue here is whether an unintended trespass, or trespass by mistake, is an accident, and, therefore, an "occurrence" as that term is defined by NBCI's policy. In Mississippi, there is no tort of "negligent" trespass. *C.N. Thomas v. Harrah Vicksburg Corp.,* 734 So.2d 312, 315-16 (¶ 7-10) (Miss. App. 1999). As the *C.N. Thomas* Court stated, "the intent required as a basis for liability as a trespasser is simply an intent to be at the place on the land where the trespass occurred." *Id.* at 316 (¶8) (citations omitted).

In Mississippi, in order for a claim of trespass to be established, a plaintiff must prove the following elements: (1) an intrusion upon the land of another without a license or other right for one's own purpose; (2) damage to the Plaintiff as a result of physical invasion of the land; and (3) credible evidence that the Defendant is the party

responsible for the tort.  *Defazio v. Chiquita Fresh North America, LLC*, No. 1:06 cv

973-HSO-JMR, 2008 W.L. 2788732, *9 (S.D. Miss. July 14, 2008).  As with other

intentional torts, negligence is not an element insofar as there cannot be a "negligent"

intentional tort.  *See, e.g., Lingross v. Heilig-Meyers Furniture*, No. Civ. A. 398 cv 24-A,

1999 W.L. 33537192 (N.D. Miss. March 18, 1999) (holding that there is no recognized

cause of action for negligent assault and battery or any similar intentional tort).

Based upon the allegations contained in the Counterclaim, there is certainly a

factual basis to demonstrate that Slocum Construction intended to build the subject

house on the property that it built it on, even though it may have been either mistaken

as to the ownership of the property, or was the victim of a fraudulent inducement by its

customer, Anderson.  All this notwithstanding, an accident "does not include damage to

persons or property when that damage is intentionally inflicted, even where that

intentional conduct is caused by erroneous information."  *Mindis Metals, Inc. v.

Transportation Ins. Co.*, 209 F.3d 1296, 1300 (C.A. 11 (Ga.) 2000).

As in *Moulton*, where the Court found that "with th[e] focus on the expectability of

the event or its consequences we can avoid the need to consider appellant's subjective

state of mind .  …  The only relevant consideration is whether, according to the

Declaration, the chain of events leading to the injuries complained of was set in motion

and followed a course consciously devised and controlled by appellant without the

unexpected intervention of any third person or extrinsic force."  *Moulton,*  464 So. 2d at

509.  The Court concluded,

> At the heart of the instant controversy is whether this Court will
> interpret the word "accident" as referring to Mrs. Moulton's actions
> swearing out a complaint that Anthony Walls had stolen her dog or

whether "accident" refers to the consequences of that act. …We are of the opinion that the contract is sufficiently unambiguous for us to hold that the term accident refers to Mrs. Mouton's action and not whatever unintended damages flowed from that act.

Mrs. Moulton obviously intended to swear out the complaint against Anthony Walls. Although she may not have intended for him to suffer humiliation or embarrassment, she certainly intended for him to be arrested.

*Id.* at 510.

As the facts presented in this case clearly demonstrate, Slocum Construction's actions in building the house in the spot and place where it built it were conscious and deliberate.  Slocum chose to rely upon the representations of Anderson instead of obtaining independent verification in the form of a survey.  The actual and likely effect of doing so on property not titled to the purchaser was well within Slocum's foresight and anticipation.  The fact that the purchaser either did not have license to authorize the construction in the place where the house was eventually built, or was actually defrauding Slocum at the time, is of no consequence.

Therefore, based upon the above cited case law, both from Mississippi on the general principle on the law of accident and "occurrence," as well as from other jurisdictions specifically involving analogous cases involving unintentional or accidental trespass, any claims for damages because of "bodily injury" or "property damage" caused to the Counter-Plaintiffs by the construction of the subject house was not caused by an accident, and, therefore, not caused by an "occurrence" as that term is defined by NBCI's Policy.

The court has concluded that no coverage was triggered under the NBCI Policy as a result of the actions complained of in the state court Counterclaim.  Nevertheless,

the policy also contains various exclusions that further prevent coverage in this case. The first is the "Expected or Intended Injury" exclusion contained in the policy. Under this exclusion, the actions of Slocum Construction in building the subject house without the aid of a survey or other title verification means that the alleged damages flowing therefrom are not covered under the NBCI's Policy.

NBCI's Policy states, in pertinent part as follows:

This insurance does not apply to:

a.    Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

Section I, Coverage A- at ¶ 2. a.

This analysis is similar to the determination of whether an "accident" caused an "occurrence" as defined in the policy. The court will only briefly retrace some of the necessary steps concerning that analysis to support its findings on this issue.

The exclusionary language applies to bodily injury which is expected or intended from the standpoint of "the insured". This is important because it dictates from which perspective the inquiry begins. In other words, in the absence of such language, it would have to be determined whether the insured not only expected and intended to act, but also expected and intended to cause the bodily injury that resulted from his actions. *See Moulton*, 464 So.2d at 509-510. However, since the exclusionary language merely requires that the damage at issue be intended or expected by the insured then all the court needs to look for is whether the putative insured's actions

-18-

were intended, and not the specific consequences of those actions.  Along this line, the *Moulton* court stated:

> The Policy states unequivocally that occurrence is to be interpreted "from the standpoint of the insured".  Thus, by the terms of the Policy, we are precluded from interpreting "occurrence" or "accident" from the standpoint of the injured party.  We are of the opinion that the contract is sufficiently unambiguous for us to hold that the term "accident" refers to Ms. Moulton's action and not whatever unintended damages flowed from that act.

*Moulton*, 464 So.2d at 510.

Therefore, when looking from the insured's perspective, as opposed to the victim's perspective, 'the question of intent does not relate to whether the defendant intended to harm the plaintiff but rather to whether the defendant intended to take the action to cause the harm."  *Barry v. McLemore*, 795 F.2d 452, 457, n.4 (5th Cir. 1986).  *See also Virginia Insurance Reciprocal v. Forrest County General Hospital*, 814 F.Supp. 535, 537 (S.D. Miss. 1993).

As discussed above, the actions of Slocum Construction in constructing the house on the subject property without the aid of a survey or other title verification was consciously and deliberately done, and the damages sustained by its owners as a result of such actions or omissions were well within the likely and actual foresight and anticipation of Slocum.  The fact that Slocum's actions were the result of error or the result of a fraud committed on it is, based upon the above cited case law, of no consequence.  Therefore, any injury or damage sustained by the Counter-Plaintiffs is subject to the "Expected or Intended Injury" exclusion contained in NBCI's policy.

Additionally, the "Damage to Property" exclusion applies to preclude coverage for any property damage caused by an occurrence, and not subject to the "Expected or

Intended Injury" exclusion. NBCI's Policy excludes "property damage", in pertinent part, as follows:

> (1)    Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;
> . . .
>
> Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damages To Premises Rented To You as described in Section III Limits of Insurance.

Section I, Coverage A, ¶ 2(j).

As alleged in the Counterclaim, Slocum continues to occupy or have renters occupy, the subject house, and derives rents there from. Exhibit A at ¶ IX. Paragraph 1 does not require that the property owned, rented, or occupied by the insured be done under color of right, hence the inclusion of the term "occupy" in the exclusion. If there is "property damage," as defined by NBCI's policy, then it would be to property rented by or occupied by Slocum Construction, albeit wrongfully. The exception to the exclusion does not apply because it is evident that the rental of the subject property has been for longer than seven or fewer consecutive days. Therefore, any property damage caused by an occurrence, and not subject to the "Expected or Intended Injury" exclusion, as those terms and exclusions are discussed above, would be excluded by Exclusion J.1 to NBCI's policy, the "Damage to Property" exclusion.

As a final matter, the court finds that there is no coverage under Part B–Personal and Advertising Injury Liability either. Part B to NBCI's policy provides the following, in

addition to the coverage provided under Part A:

    1.    Insuring Agreement

        a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

            (1)    The amount we will pay for damages and "defense expenses" is limited as described in Section III - Limits Of Insurance; and

            (2)    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements and "defense expenses" under Coverages A or B or medical expenses under Coverage C.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

        b.    This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

Section I, Coverage B, Personal and Advertising Injury Liability, as modified by the

"Defense Expense" Included in the Limit of Insurance Endorsement.

    The NBCI Policy defines "personal and advertising injury" as follows:

    Injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    a.    False arrest, detention or imprisonment;

     b.     Malicious prosecution;

     c.     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premise that a person occupies, committed by or on behalf of its owner, landlord or lessor;

     d.     Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization=s goods, products or services;

     e.     Oral or written publication, in any manner, of material that violates a person=s right of privacy;

     f.     The use of another=s advertising idea in your "advertisement"; or

     g.     Infringing upon another=s copyright, trade dress or slogan in your "advertisement".

Section V, at ¶ 14.

Coverage for damages because of "personal and advertising injury" is limited to the specific "offenses" listed. The term "offense" is not defined in the Policy. However, the term has been analyzed by the Fifth Circuit applying Texas law. *In St. Paul Fire & Marine Insurance Co. v. Green Tree Financial Corp.-Texas*, the Fifth Circuit stated,

> In context, the word "offense" is subject only to one reasonable interpretation. If the literal definition of "offense" were applied to the basic insurance policy, the insured would not have coverage for personal injury. "Offense" means "a violation of law; crime, often a minor one." Black's Law Dictionary 1108 (7th ed. 1999). St. Paul's basic insurance policies exclude all personal injuries resulting from the violation of criminal statutes. Because the definition of personal injury requires an offense, a literal translation would preclude personal injury coverage. Therefore, the only reasonable interpretation of "offense" in the context of the policy is simply that the term refers to the acts listed in the policy's personal injury definition.

*St. Paul Fire & Marine Insurance Co. v. Green Tree Financial Corp.-Texas*, 249 F.3d 389, 393 n.4 (5th Cir. 2001).

The only defined "offense" contained within the definition of "personal and advertising injury" that even comes close to the facts underlying this case is that part of

the definition contained in Part "c".  This part includes as part of "personal and advertising injury", injury arising out of, "the wrongful eviction from, or wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor."  Section V, ¶14.c.

This part of the definition of "personal and advertising injury" requires (1) the wrongful eviction from, or wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises, (2) that the claimant occupies and (3) that the wrongful eviction from, or wrongful entry into, or invasion of the right of private occupancy is "committed by or on the behalf of its [the property's] owner, landlord or lessor".  Section V, ¶14.c.

The majority of reviewing courts have held that this provision relates to real property as opposed to personal property, and thus may include claims for trespass to real property.  *See American Guarantee and Liability Insurance Co. v. 1906 Company*, 273 F.3d 605, 618 n. 7 (5th Cir. 2001)(interpreting different policy language than NBCI's).  *See also Millers Mutual Ins. Assoc. v. Graham Oil Co.*, 668 N.E. 2d 223, 230-231 (Ill.App.Dist.2 1996)(interpreting different policy language than NBCI's); *Whiteville Oil Co., Inc. v. Federated Mutual Ins. Co.*, 889 F.Supp. 241246-47 (E.D. N.C. 1995) (same); *Butler v. Clarendon America Ins. Co.*, 494 F.Supp.2d 1112, 1133 (N.D. Cal. 2007) (same).

Here, based on the above, the construction of the subject house by Slocum on the Youngblood/McKenzie property without right or permission could qualify, under a

broad reading of the policy language[1] as a "wrongful entry or invasion of the right of private occupancy" of a "premises". However, there are no facts to demonstrate that the "wrongful entry into or invasion of the right of private occupancy" was committed by the owner of the "premises". *See, e.g., Burges v. American Family Mutual Ins. Co.*, No. 05-3275-CV-S-ODS, 2007 WL 1452515, *3 (W.D. Mo. May 15, 2007)(holding that "personal injury" coverage only exists under similar paragraph if the tresspass was committed or performed by or on behalf the property owner, landlord or lessor).

The issue at hand involves a claim for trespass, wherein Slocum Construction constructed a house on the property of the Counter-Plaintiffs without right or authority. The Counter-Plaintiffs are not alleging that they have at any point in time occupied the subject house or were wrongfully ejected from it by Slocum, its claimed rightful owner. *See Whittier Properties, Inc. v. Alaska National Ins. Co.*, 185 P.3d 84, 93-94 (Alaska 2008) (holding that the insured must be the "owner, landlord, or lessor" of the property the subject of the trespass for Part B coverage to exist under similar language to NBCI's Policy); *U.S. Fid. & Guar. Co. v. Goodwin*, 950 F.Supp. 24, 26-27 (D. Me. 1996) (same). Therefore, the Counter-Plaintiffs' claims for trespass do not trigger coverage under Part B of NBCI's policy.

The court therefore finds that the plaintiff, National Builders and Contractors

---

[1]  Notably, some courts have held that this coverage part under Part B, only applies to landlord-tenant situations. *See, e.g., Mid-Continent Casualty co. v. Camaley Energy Co., Inc.*, 364 F.Supp.2d 600, 608 (N.D. Tex. 2005) (and authority cited therein). *See also Century Surety Co. v. Dewey Bellows Operating Co., Ltd.,* No. H-08-1901, 2009 WL 2900769*5 (S.D. Tex. Sept. 2, 2009) (holding that the "wrongful entry" prong of the definition of "personal injury" is applicable only to residential landlord-tenant cases).

Insurance Company, is entitled to summary judgment on its motion and a declaratory judgment that it owes neither coverage nor a duty to defend under Policy Number GL289079607 issued to Slocum Construction, LLC, for claims arising from the state court Counterclaim filed by Robert Youngblood, as Trustee for the use and benefit of Walter Earl McKenzie.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment **[#16]** filed on behalf of the plaintiff, National Builders and Contractors Insurance Company, is granted and that  National Builders and Contractors Insurance Company is granted a declaratory judgment that it owes neither coverage nor a duty to defend under Policy Number GL289079607 issued to Slocum Construction, LLC, for claims arising from the state court Counterclaim filed by Robert Youngblood, as Trustee for the use and benefit of Walter Earl McKenzie.

SO ORDERED AND ADJUDGED this the 18th day of June, 2010.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE